IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOEL FAUST <u>et al.</u>                          *
                                                *
          v.                                    *   Civil Action WMN-10-2336
                                                *
COMCAST CABLE COMMUNICATIONS                    *
MANAGEMENT, LLC                                 *
                                                *

*    *    *    *    *    *    *    *    *    *    *    *    *

ISHMAEL ANDREWS <u>et al.</u>                    *
                                                *
          v.                                    *   Civil Action WMN-12-2909
                                                *
COMCAST CABLE COMMUNICATIONS                    *
MANAGEMENT, LLC                                 *
                                                *

*    *    *    *    *    *    *    *    *    *    *    *    *

<u>MEMORANDUM</u>

These two related actions have been pending before this
Court for a considerable period of time:  <u>Faust v. Comcast Cable</u>
<u>Communications Management, LLC</u>, Civ. No. WMN-10-2336 (<u>Faust</u>),
for more than four years; and <u>Andrews v. Comcast Cable</u>
<u>Communications Management, LLC</u>, Civ. No. WMN-12-2909 (<u>Andrews</u>),
for more than two years.  As these cases move closer to trial,
the parties have filed motions seeking to alter the scope of
those trials.  In <u>Faust</u>, Plaintiffs have filed a motion for
leave to amend the complaint to add additional Named Plaintiffs.
<u>Faust</u>, ECF No. 138.  In <u>Andrews</u>, Defendant has filed a motion to
sever the claims of the three Named Plaintiffs into three
separate proceedings.  <u>Andrews</u>, ECF No. 82.  In addition to

these motions, Plaintiffs have filed near identical motions for discovery sanctions in both actions.  Faust, ECF No. 143; Andrews, ECF No. 84.  All four motions are ripe.  Upon review of the papers and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that Defendant's motions to sever in Andrews will be granted and the remaining motion will be denied.

## I. MOTION TO AMEND (FAUST) and MOTION TO SEVER (ANDREWS)

The factual and procedural background of these cases has been previously set out by this Court, most recently in its July 15, 2014, Memorandum denying the motions for class certification under Rule 23 of the Federal Rules of Civil Procedure that Plaintiffs had filed in both actions.  Faust, ECF No. 134; Andrews, ECF No. 77.  Briefly stated, these actions involve claims that Plaintiffs, who were employed by Defendant as Customer Account Executives (CAEs), were required to work "off-the-clock" without pay.  They bring claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (FLSA), as well as under the Maryland Wage and Hour Law (MWHL), Md. Code Ann., Lab. & Empl. §§ 3-401 to 3-407, and the Maryland Wage Payment and Collection Law (MWPCL), Md. Code Ann., Lab. & Empl. §§ 3-501 to 3-509.

### A. Procedural History of Faust

Faust was filed on August 23, 2010, by two Named Plaintiffs, Joel Faust and Marshall Feldman.  It was originally brought as a potential class action for a class to include all CAEs that worked in all of the call centers operated by Defendant in Maryland.  During the relevant time period, Defendant operated eight such call centers.  On November 1, 2011, this Court conditionally certified a collective action under the FLSA that encompassed only CAEs employed or formerly employed at one of those call centers, the center located at 8110 Corporate Drive in White Marsh, Maryland (the 8110 Call Center), at which both Named Plaintiffs had been employed.  ECF No. 43.  In response to the notice of the conditional certification sent to those potential class members, 56 additional CAEs opted into this action.

On March 27, 2012, the Court issued an order permitting limited discovery as to the Opt-In Plaintiffs.  The Court permitted Defendant to depose 11 of those Plaintiffs, but limited the deposition hours to 40.  It also permitted Defendant to serve up to 10 requests for production from those CAEs that were deposed, but no interrogatories could be served on those individuals.  The depositions of those eleven Opt-In Plaintiffs were taken between August 2012 and August 2013.

On November 11, 2013, Plaintiffs filed a motion seeking to certify a class action as to the claims under the MWHL.  The Court denied that motion on July 15, 2014, concluding that, "[w]hile there may be some questions of fact and law that are common among all class members, the Court finds that the critical issues in this litigation are not subject to common proof."  Faust, ECF No. 134 at 26-27.  The Court acknowledged that all potential class members were subject to the same official policies prohibiting any work off-the-clock, were subject to similar time-keeping requirements, and were generally subject to the same pressures to maximize their time dealing with customers on the telephone.  See id. at 27 n.12.  The Court noted, however, that these policies and procedures, as well as any unofficial policy permitting or requiring CAEs to work off-the-clock, would have been communicated, implemented, and enforced by different supervisors, perhaps in different ways.  Id. at 28-31.  The Court also noted that the practices and routines of individual CAEs varied significantly, particularly as to "badge swiping" upon entering the call center, engaging in work and non-work activities before and after logging into the Comcast computer system, and the manner in which they recorded their work starting and ending times.  Id. at 33-35.  In addition to defeating class treatment of Plaintiffs' claims, the Court found that these differences significantly reduced the

4

usefulness of "badge swipe data" and "First NT Login data" in calculating the amount of any off-the-clock work.  Id.

In its Order denying class certification, the Court requested that the parties submit a status report proposing the manner in which this case should proceed to trial.  Faust, ECF No. 135.  The parties submitted their joint report on July 27, 2014.  In that report, Defendant expressed its intention to file a motion to decertify the collective action and Plaintiffs, apparently anticipating that the Court would grant Defendant's motion to decertify, expressed their intent to file a motion to amend the Complaint to add several of the Opt-In Plaintiffs as Named Plaintiffs.  Faust, ECF No. 136 at 1.  The parties also reported that they did not believe that any additional discovery was needed, unless the Court were to grant the motion to amend and additional discovery was necessary related to those new Named Plaintiffs.  Id.

With the denial of class certification of the state law claims, the Faust action now consists of the individual MWHL and the MWPCL claims of the two Named Plaintiffs, and the conditional collective action under the FLSA.  Were the Court to grant the anticipated motion to decertify the collective action under the FLSA, the case would be tried on the FLSA, MWHL, and MWPCL claims of the two Named Plaintiffs.  In their motion to amend, Plaintiffs seek to add as Named Plaintiffs nine of the

eleven Opt-In Plaintiffs that were deposed as part of the pre-certification discovery.  If granted, that would result in a single trial of the claims of eleven CAEs.

### B. Procedural History of Andrews

Almost a year after the Court declined to certify a conditional class under the FLSA in Faust that would encompass all of Defendant's call centers in Maryland, Ishmael Andrews and Kyle Camp filed a separate action on October 1, 2012, to assert the claims of current and former CAEs of the call center located at 8031 Corporate Drive in White Marsh, Maryland (the 8031 Call Center).  As initially brought, this action included claims for a collective action under the FLSA and a class action under the MWHL and the MWPCL.  Plaintiffs subsequently moved to amend the Complaint on August 20, 2013, to eliminate the assertion of a collective action under the FLSA and to add Aubrey Foster as a third Named Plaintiff.  The Court granted that motion on August 22, 2013.

In the Memorandum and Order that denied class certification in Faust, the Court denied the same in Andrews for the same reasons.  Since Plaintiffs have dismissed the collective action aspect of their FLSA claim, this action now simply asserts the FLSA, MWHL, and MWPCL claims of the three Named Plaintiffs.  In its motion, Defendant seeks to sever the claims and have each Named Plaintiff try his or her claims in a separate proceeding.

### C. Legal Standards

A number of Federal Rules of Civil Procedure and related legal standards govern these two motions.  In Faust, Plaintiffs would need to satisfy the requirements of Rule 16, Rule 15, and also Rule 20.  Rule 16 states in relevant part that a Court's scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  This Court's initial scheduling order, issued on October 26, 2010, set December 10, 2010, as the deadline for moving to join additional parties.  Faust, ECF No. 13 at 2.  While other deadlines in that scheduling order have been modified at the request of the parties, no party requested any modification of the deadline for adding new parties until now.  To determine whether Plaintiffs meet Rule 16's "good cause" standard, the Court must consider the "danger of prejudice to the non-moving party, the length of delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith."  Tawwaab v. Virginia Linen Serv., Inc., 729 F. Supp. 2d 757, 768–69 (D. Md. 2010) (internal quotation omitted).  In making that determination, "the focus of the [good cause] inquiry is upon the moving party's reasons for seeking modification.  If that party was not diligent, the inquiry should end."  Rassoull v. Maximus, Inc., 209 F.R.D. 372, 374 (D. Md. 2002) (internal quotation omitted).

If Plaintiffs in <u>Faust</u> meet the good cause standard of Rule 16, they next need to satisfy the conditions of Rule 15.  The standard under Rule 15 is more liberal, instructing that courts should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  Denial of leave to amend under this rule is only appropriate where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment . . . ."  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

Should Plaintiffs in <u>Faust</u> meet the requirements of Rules 16 and 15, they would still need to satisfy the requirements for permissive joinder of parties under Rule 20 in order to inject nine new Plaintiffs into that proceeding.  To have their claims joined in the same action, plaintiffs must "assert a right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences," and there must arise in the action a "question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a)(1).  In interpreting this Rule, the Supreme Court has recognized that, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."  <u>United Mine Workers v. Gibbs</u>,

8

383 U.S. 715, 725 (1966).  Courts, however, are given "wide discretion concerning the permissive joinder of parties" and, in exercising that discretion, may "deny joinder if it determines that the addition of the party [or parties] under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay."  Aleman v. Chugach Support Servs., Inc., 485 F.3d 206, 218 n.5 (4th Cir. 2007) (internal quotations omitted).

Defendant's motion to sever in Andrews implicates the same Rule 20 standard.  For the three Named Plaintiffs in Andrews to try their claims in a single action, they must also meet those same requirements for permissive joinder.  If those requirements are not met, the Named Plaintiffs are misjoined and the Court can sever their claims under Rule 21.  The Court will first address the motion to sever in Andrews and then the motion to amend in Faust.

**D. Motion to Sever in Andrews**

As several courts have observed, the same considerations and logic that would lead a court to deny a motion for class certification would also support the conclusion that the plaintiffs' claims are misjoined.  See, e.g., Hawkins v. Alorica, Inc., Civ. No. 11-283, 2012 WL 5364434, at *3 (S.D. Ind. Oct. 30, 2012); Martinez v. Haleas, Civ. No. 07-6112, 2010 WL 1337555, at *3 (N.D. Ill. Mar. 30, 2010).  This Court,

however,  would not extend this observation as far as Defendant

urges in its reply memorandum when it argues that the "law of

the case" now compels severance.  ECF No. 90 at 4-6.  In the

cases relied upon by Defendant in support of its "law of the

case" argument, Ebbs v. Orleans Parish School Board, Civ. No.

04-1198 (E.D. La. Aug. 15, 2014) and Torres-Hernandez v. Florida

State Plastering, LLC., Civ. No. 10-40 (M.D. Fla. Jan 26, 2011),

the courts were considering the impact of a previous ruling

either initially denying a motion for certification of a

collective action under the FLSA (Torres-Hernandez) or

decertifying a previously certified FLSA collective action

(Ebbs).  The "similarly situated" standard for certification of

a collective action under the FLSA is "more elastic and less

stringent" than the standard for permissive joinder under Rule

20.  Grayson v. K Mart Corp., 798 F.3d 1086, 1095 (11th Cir.

1996).  Accordingly, if a court finds that the plaintiffs'

claims have failed the less stringent standard for a collective

action under the FLSA, it would also find that they fail the

standard for permissive joinder under Rule 20.  This Court,

however, decided the motion for class certification under Rule

23 of the Federal Rules of Civil Procedure and courts have

recognized that "the standard for showing joinder is appropriate

may not be as stringent as the standard for class certification

[under Rule 23]."  Hawkins, 2012 WL 5364434, at *3.

While this Court's previous ruling does not compel the Court to grant the motion for severance, its conclusion that most of the critical issues in this litigation are not subject to common proof certainly aligns with a decision to grant the motion.  The claims of the three Named Plaintiffs are particularly illustrative of the lack of common proof.  While all three may have had the same job title, worked in the same department at the same time, and now assert claims that they worked off-the-clock without pay, their specific claims and the proof of those claims are highly individualized.

Plaintiff Andrews worked under three supervisors: Julio Ford, Lelia Taylor, and Jeremy Popa.  Andrews testified that it was Ford who instructed him that he must come in early before his shift started to get his computer systems up and running and to check email, yet also told him that he could not record that time.  Andrews Dep. at 45-16, Andrews, ECF No. 85-1.  Ford denies ever giving that instruction to any CAE.  Ford Decl. ¶¶ 3-4, Andrews, ECF No. 82-8.  When confronted with his timesheets, Andrews acknowledged that, at times, he did record and was paid for pre-shift work.  Andrews Dep. at 75.  Andrews also alleges that he worked off-the-clock during his lunch break and that all three of his supervisors were aware of that fact. Id. at 55-59.  In addition, Andrews testified that, when working under Popa, he was required to work off-the-clock after his

shift ended.  Id. at 50.  Ford and Taylor, however, permitted him to put down time worked post-shift and Taylor would also approve pre-shift work, on a case-by-case basis.  Id. at 51, 55. Andrews acknowledged in his deposition that it struck him as odd that his supervisors all had different policies.  Id. at 50.

Plaintiff Camp had three different supervisors than Andrews: Michael Hitt, Adona Smith, and Erica Etienne.  Unlike the other two Named Plaintiffs, Camp's primary complaint is that there were occasions when there were issues with the computer system that prevented him from logging in and his supervisors would not approve that time because he was not taking calls. Camp Dep. at 35-37, Andrews, ECF No. 85-2.  He acknowledged, however, that some days he was paid for that time.  Id. at 126. Unlike Andrews, Camp makes no claim that he did off-the-clock work during his lunch break or after his shift ended.  Id. at 67, 130.  Although not directed to the issue of joinder, Camp's testimony perhaps best reflects his own views as to whether his claims are similar to those of other Plaintiffs: "I represent myself basically.  I have nothing to do with any other employee. You know, basically, if they [have something] against Comcast for whatever reason, that's their issue.  My issue is my issue." Id. at 135.[1]

---

[1] The review of their depositions reveals that Plaintiffs appear to have little awareness of the claims of their co-Plaintiffs.

Foster makes no claim that, like Andrews, she worked unpaid during lunch breaks or after her shift ended or that, like Camp, she was unable to record time because of systems problems.  Like Andrews, she was supervised by Ford and Popa, but she makes no claim that it was those supervisors who instructed her to work off-the-clock.  Instead, she testified that it was the two individuals that trained her when she first started at Comcast that instructed her to arrive fifteen minutes before her shift began but not to record that time.  Foster Dep. at 39, <u>Andrews</u>, ECF No. 85-12.  She testified that she was not sure if Ford or Popa had ever instructed her to arrive early or not record all of the time that she worked.  <u>Id.</u> at 57-58.[2]

As the Court noted in its previous opinion, to recover for the alleged unpaid overtime, there are at least four questions that must be answered before the finder of fact can determine if any given Plaintiff can establish Defendant's liability for unpaid overtime: (1) did Plaintiff work overtime?; (2) was Plaintiff compensated for that overtime?; (3) if Plaintiff was not compensated, did Defendant know, or should it have known, that Plaintiff worked that overtime?; and, (4) was the amount of

---

Thus, they would be unlikely to be able to give any testimony in support of a co-Plaintiff's claim.

[2] Reviewing Foster's deposition, it is not clear how much she actually remembers about what she was told.  Her most frequent response throughout her deposition was "I'm not sure" or "I don't remember."  <u>See</u> <u>id.</u>, <u>passim</u>.

overtime greater than what would be considered <u>de minimis</u>?
<u>Andrews</u>, ECF No. 77 at 27-28.  The answer to each of these
questions, particularly the question of Defendant's knowledge of
any off-the-clock work, will turn primarily on the credibility
of the different specific witnesses relevant to the claims of
each individual Plaintiff.

It is undisputed that Defendant's official policy was that
no CAE was to work off-the-clock and that all time CAEs spent
working should be recorded and compensated.  Plaintiffs assert
that Defendant had an unofficial policy that was very different
than that official policy and support that assertion with their
individual recollections of what they were told by their various
trainers and supervisors.  Defendant denies the existence of any
unofficial policy and supports that denial with the testimony of
its trainers and supervisors.  As noted above, each Plaintiff
asserts that the unofficial instruction to work off-the-clock
came from different sources than the sources identified by their
co-Plaintiffs.  Thus, the relevant witnesses for each
Plaintiff's claims will be different.  Furthermore, the relevant
data - including timesheets, pay records, login data, and badge-
swipe data - will be entirely different for the claims of each
Plaintiff.

In light of the highly individualized nature of the proof
of each Plaintiff's claims, the Court concludes that Plaintiffs'

14

claims do not arise out of the same transaction or occurrence and, therefore, that severance is appropriate. The reasoning of the court in <u>Hawkins</u> in evaluating whether similar claims of call center employees could be properly joined is equally if not more applicable here. That court observed:

> because the Court has already found that [the plaintiff] has not shown there was a company-wide policy at the [] call center to require unpaid pre- and post-shift work — rather, what [customer service representatives (CSRs)] were told regarding pre- and post-shift work varied depending upon who their supervisors were — trying the claims of CSRs who were instructed differently would create the risk of prejudice to [the defendant] and potentially lead to confusion if the claims were tried together, before one jury.

2012 WL 5364434, at *3.

Accordingly, the Court will dismiss, without prejudice, the claims of Kyle Camp and Aubrey Foster and this case shall proceed on the claims of the first Named Plaintiff, Ishmael Andrews, only. Should either dismissed Plaintiff choose to file individual complaints, they should be noted as related actions and will be assigned to the undersigned. In addition, any documents or materials that have been filed in <u>Andrews</u> can be deemed to have been filed in any new complaint on the date that those documents or materials were filed in <u>Andrews</u>.

### **E. Motion to Amend in Faust**

The Court will assume, without deciding, that Plaintiffs in <u>Faust</u> could pass the hurdles presented by Rules 15 and 16. As

to Rule 16, while the request to add new Plaintiffs comes well after the Court's deadline for adding new parties expired, the delay can be explained by the changing circumstances presented, specifically, the Court's denial of class certification and anticipated decertification of the collective action. Plaintiffs' ability to meet the standard of Rule 15 is somewhat more problematic.  While there is no indication of undue delay, bad faith, or dilatory motive on the part of Plaintiffs, there is a possibility of prejudice to Defendant were the Court to add new Plaintiffs well after discovery has closed in this action. While Defendant did take some discovery from these individuals, that discovery was limited by the Court to issues related to certification.  The Court notes, however, that Defendant has not identified any specific merits discovery that is still required and that was not encompassed in the certification discovery.

Nevertheless, the Court finds that Plaintiffs cannot meet the requirements for permissive joinder under Rule 20 for all of the same reasons as those requirements were not met in <u>Andrews</u>. Here, the addition of these new Plaintiffs would result in a trial consisting of eleven mini-trials of marginally related claims.  The record before the Court on the motion for class certification established that there was no common practice or policy requiring off-the-clock work at the 8110 Call Center. Instead, the claims are based on the alleged instructions of

various supervisors given at various times, as understood by
various individual CAEs.  As in Andrews, the claim of each
individual Plaintiff will rise or fall on the testimony and
credibility of different witnesses and the individualized data
related to each claim.  Thus, the Court will deny the motion to
amend.

While there is no pending motion in Faust to decertify the
conditional class or to sever the claims of the two Named
Plaintiffs, it would appear that, absent the presentation of
some unique facts or argument, such motions would be granted.
Although the parties are certainly entitled to fully brief these
motions and await the Court's ruling on them, one could question
if that is the most expedient way to proceed.  Given that
discovery is complete and the parties have indicated that no
motions for summary judgment will be filed in either action, the
claims would appear to be ready for trial without further delay.
The Court asks that the parties meet and confer and submit a
status report to the Court within 14 days as to how they believe
these cases should best proceed.

## II. MOTIONS FOR SANCTIONS

In both actions, Plaintiffs have filed a motion for
discovery sanctions related to Defendant's failure to begin
preserving "First NT Login data" at the point in time that
Plaintiffs believe Defendant was obligated to begin preserving

that data.  Plaintiffs assert that Defendant's obligation began
either on August 23, 2010, when the complaint was filed in
Faust, or at the latest, on November 3, 2010, when Plaintiffs'
counsel sent an email to Defendant's counsel putting Defendant
on notice of its duty to preserve and produce this data.  It is
undisputed that, before this lawsuit was filed, Defendant
permitted this NT Login data to be overwritten on a rolling
basis, so that it was not preserved for more than 2 to 4 months
at any given time.  It was not until April 2, 2011, that
Defendant finished developing a new computer application so that
it could begin preserving this data.[3]  Defendant has preserved
that data for the 8110 and 8031 Call Centers since that time.

Plaintiffs' submission of these motions for sanctions is
somewhat puzzling.  Plaintiffs were informed in June of 2012
that there was no NT Login data for the time period in question
but took no action on that information until filing these
motions more than two years later.  In its ruling on the class
certification motions, the Court commented on the lack of any
timely action by Plaintiffs on this very issue.  In response to
Plaintiffs' complaint concerning the limited amount of this data
that was available to their expert, the Court noted,

---

[3] Plaintiffs characterize the delay as "the seven months between
the explicit email request from Plaintiffs' counsel in November
2010, and April 2011, when the log-in data was finally
preserved."  ECF No. 148 at 9.  By the Court's calculation, the
delay was not seven months, but rather five months.

discovery closed long ago without any objections by
Plaintiffs as to the scope of the information received
and Plaintiffs cannot raise those issues now for the
first time.  If Plaintiffs believed that there was a
preservation or discovery obligation that Defendant
did not meet, they should have timely filed a motion
to compel or a motion for sanctions for spoliation.
They did not.

Faust, ECF No. 134 at 10.

In addition to being late in coming, these motions are also

generally lacking in merit.  In the Fourth Circuit, a party must

show the following elements to support a sanction for

spoliation:

(1) [T]he party having control over the evidence had
an obligation to preserve it when it was destroyed or
altered; (2) the destruction or loss was accompanied
by a "culpable state of mind;" and (3) the evidence
that was destroyed or altered was "relevant" to the
claims or defenses of the party that sought the
discovery of the spoliated evidence, to the extent
that a reasonable factfinder could conclude that the
lost evidence would have supported the claims or
defenses of the party that sought it.

Victor Stanley, Inc. v. Creative Pipe, Inc., 269 F.R.D. 497,

520-21 (D. Md. 2010) (quotation omitted).

As to the Andrews litigation, it is not clear that

Defendant had an obligation to preserve any of this data from

the time period in question.  Plaintiffs acknowledge that

"Defendant had been preserving NT-Login Data for a year and a

half before this case was filed in October 2012."  ECF No. 92 at

6 (emphasis added).  They then argue, however, that "Defendant

19

had a duty to do more," id., suggesting that, because Faust, as
initially filed, contemplated a class consisting of CAEs
employed in all of Defendant's Maryland call centers, "Defendant
had a duty to start preserving data for all Defendant's call
centers in the state of Maryland." Id. Assuming that is an
accurate assessment of Defendant's obligation while there
remained the potential for a class encompassing CAEs at all of
Defendant's Maryland call centers, Plaintiffs do not explain why
Defendant would have any obligation to continue to preserve that
data for all call centers after the Court limited Faust to the
8110 Call Center on November 1, 2011. Eleven months passed
before Plaintiffs filed the new lawsuit related to the 8031 Call
Center and, according to Defendant, Plaintiffs gave no
indication to Defendant that they would be filing a second suit
concerning that particular call center until that suit was
actually filed. The Court notes that Plaintiffs have never
filed any new suits related to any of the other Maryland call
centers. Plaintiffs provide no explanation for their theory
that Defendant should have somehow predicted that there would be
a new suit related to the 8031 Call Center and, thus, were
obliged to continue to retain NT Login data for that center.

    As to the Faust litigation, the Court finds that Defendant
took reasonable and timely steps to preserve this marginally
relevant data. It is undisputed that Defendant had no

independent business reason to maintain the NT Login data outside of this litigation.  As the Court discussed at some length in its memorandum denying class certification, this data is also of questionable probative value in this litigation. Faust, ECF No. 134 at 33-36.  The Court flatly rejected Plaintiffs' theory that First NT Login was an accurate marker for the beginning of the workday.  Id. at 34.  Nevertheless, after receiving the discovery request related to this data in November 2010, Defendant's Director of Legal Technology reached out to various groups within the corporation regarding the retention of this data and it was determined by March of 2011 that the most expedient way to do so was to develop a custom computer application.  That application was developed and put into place on April 2, 2011, and Defendant began retaining the NT Login data for its more than 1200 employees in all of its Maryland call centers from that point forward.  While Plaintiffs now query whether Defendant could have begun retaining this data sooner by purchasing a third-party application or by utilizing the method that was being used to retain this data in its Illinois call center for other litigation, these are questions that could have been raised long ago as the need for and the process of developing the application to capture this data was explained in a deposition that was taken in September 2012. Dep. of Robert Mervin, Faust, ECF No. 147-1.

Putting aside the issues of the timeliness of Plaintiffs'
motions for sanctions and the marginal relevance of the NT Login
data, the motions have no merit, whatsoever, as to Plaintiffs
likely to remain in Faust.  The two Named Plaintiffs in Faust
left Defendant's employ before the suit was even filed: Joel
Faust on May 26, 2010, and Marshall Feldman on April 2, 2010.
Thus, if Defendant would have begun capturing this data on the
day the suit was filed, it would still have no data related to
Faust or Feldman.

Should the Court not decertify the conditional class in
Faust, or should the Opt-In Plaintiffs file separate suits if
Faust is decertified, the Court might need to reevaluate the
impact of the alleged delay in preserving the NT Login data.
There are 37 Opt-In Plaintiffs that are currently a part of this
action.  Of those, 13 ceased working before the case was filed
and, thus, as with Faust and Feldman, there is no argument that
Defendant should have NT Login data for these individuals.
There are 13 Opt-In Plaintiffs who were employed at the time
that the lawsuit was filed but who separated their employment
prior to April 2011 and, therefore, there is no NT Login data
for these individuals.  Finally, there are 11 Opt-In Plaintiffs
remaining in this case who were employed on and beyond April 2,

2011, and for whom there is at least some NT Login data.[4]   For those last two categories of Plaintiffs, the Court will rule on the merits of any spoliation motion as the need arises.

## III. CONCLUSION

For the reasons stated above, the Court will deny Plaintiffs' Motion to Amend in Faust, will grant Defendant's Motion to Sever in Andrews, and will deny both motions for sanctions.   A separate order consistent with this memorandum will issue.

/s/
William M. Nickerson
Senior United States District Judge

DATED:  February 11, 2015

---

[4] For one of those individuals, Defendant retained and produced NT Login data for the entire term of his employment, July 25, 2011 through December 18, 2011.